# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HARRY CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 05 C 6994 |
| TIMOTHY BUDZ, DARRELL SANDERS, CAROL VANCE, JOVITA ANYANWU, SAEED FAKIH, TINA ECKDAHL, ADDUS HEALTHCARE, INC. AND VARIOUS OTHER DEFENDANT(S) THAT WILL BE NAMED UPON THE DISCOVERY OF THEIR IDENTITIES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Harry Cain ("Cain") has brought claims under 42 U.S.C. § 1983 (2005) against various personnel of the State of Illinois Treatment and Detention Facility for Sexually Violent Persons ("TDF") and against Addus Healthcare, Inc. ("Addus"), an entity that contracted with the State of Illinois to provide health care services at TDF and that employed some of the individual defendants. Cain is a civilly committed resident of TDF and alleges that TDF personnel failed to provide medical treatment to him after a TDF vehicle in which he was riding was involved in a traffic accident. Cain further contends that this failure, as well as the lack of a written TDF policy governing traffic accidents, constituted deliberate indifference to his serious medical needs. Before me is a motion by defendants Saeed Fakih ("Fakih") and

Darrell Sanders ("Sanders") for summary judgment.[1] For the reasons given below, I grant their motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party meets this burden, the non-moving party must then go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Id.* (citing FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990)). The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). I must construe all facts in the light most favorable to Cain and draw all reasonable and justifiable inferences in his favor. *Anderson*, 477 U.S. at 255.

---

[1] Defendants Carol Vance ("Vance"), Jovita Anyanwu and Addus moved for summary judgment in a separate motion. I granted their motion on September 25, 2006.

2

II.

On January 5, 2007, I granted Fakih and Sanders' motion to adopt their Local Rule 56.1(a)(3) statement of uncontested facts for Cain's failure to comply with Local Rule 56.1. Previously, on September 21, 2006, I granted Fakih and Sanders' motion to deem admitted the facts set forth in their requests for admission to which Cain did not respond. Consequently, for purposes of Fakih and Sanders' present motion for summary judgment, the relevant facts are as follows:[2]

Cain has been civilly committed to the custody of the Illinois Department of Human Services ("DHS").[3] At the time of the events giving rise to this lawsuit, Cain resided at the TDF in Joliet,

---

[2] In addition, Cain never submitted his own statement of facts that complied with the Local Rules; he did submit a "Statement of Disputed Factual Issues" that did not comply and I struck it on November 22, 2006. He also submitted two separate declarations titled "Declaration in Opposition to Defendant's Motion for Summary Judgment" in which he disputes certain of the facts presented in defendants' statement of uncontested facts and in their requests for admission. Because I have adopted Fakih and Sanders' statement of uncontested facts, I must disregard any facts contained in Cain's declarations that contradicts that statement.

[3] Cain was committed under the Sexually Violent Persons Commitment Act, 725 ILL. COMP. STAT. ANN. 207/1 et seq. (2006)(the "SVPA"). Under the SVPA, "sexually violent persons" are subject to involuntary civil commitment. Id. The SVPA defines a "sexually violent person" as one "who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of a sexually violent offense by reason of insanity and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence." Id. at 207/5(f).

Illinois; after Cain filed this complaint the TDF was moved to Rushville, Illinois, where Cain now resides. At all times relevant to this lawsuit, Sanders was the director of security at TDF, and Fakih was a security therapist aid at TDF.

On February 3, 2005, TDF personnel transported Cain to a doctor's appointment at the University of Illinois Medical Center in Chicago, Illinois. Cain was transported from the appointment back to TDF in a DHS van. Fakih and Tina Eckdahl ("Eckdahl"), who is also a TDF employee, were in the van with Cain. As the van traveled back to TDF, it stopped to allow an emergency services vehicle to pass, and was subsequently struck from behind by a truck. The accident caused some amount of damage to the vehicle, including a smashed window. Immediately following the accident, either Fakih or Eckdahl called 911. Police arrived at the scene and asked Cain if he needed immediate medical assistance. Cain told the police he did not. When asked about his condition at the scene of the accident, Cain complained of a headache and a sore neck and back. Cain did not request immediate medical attention from anyone at the scene of the accident and did not request to be transported to the hospital from the scene. Following the accident, TDF employees transported Cain directly back to TDF. Fakih and Eckdahl themselves did not seek medical treatment until after they had driven Cain back to TDF. Once Cain was back at TDF, Fakih had no authority over the medical treatment provided to Cain.

4

Upon arrival back at TDF, Cain was examined by TDF medical staff. After that examination, Vance and Timothy Budz ("Budz") sent Cain to Silver Cross Hospital for evaluation. Doctors there treated Cain and diagnosed him with a sprained shoulder. He was discharged and sent back to TDF the same day.

In the next few months, Cain was examined on numerous occasions by medical doctors at the TDF Health Care Unit, including on February 4, February 11, February 16, February 18, March 11, and March 28, 2005. A TDF medical doctor prescribed pain medication for Cain on February 11, February 18 and March 28, 2005. A TDF medical doctor also recommended "exercises" on February 18 and March 28, 2005. On March 7 and March 17, 2005, TDF employees transported Cain to the University of Illinois hospital for medical appointments involving a surgical procedure unrelated to the February 3 accident. During those appointments, TDF employees did not prevent Cain from discussing his injuries from the February 3 accident with medical personnel. On April 4 and April 18, 2005, a TDF medical doctor saw Cain for complaints unrelated to the February 3 accident. Cain has not returned to the TDF Health Care Unit for treatment of his injuries from the February 3 accident since March 28, 2005.

Cain has admitted that Sanders was not directly involved in his treatment or the medical decisions made about his treatment, that Sanders was not "insensitive" to his medical needs, and that

5

Sanders did not cover up any facts or circumstances related to the February 3 accident. Sanders has provided an affidavit stating that his job responsibilities do not include providing medical treatment or making medical decisions on behalf of residents involved in motor vehicle accidents, and Cain has not provided any evidence controverting that contention.

On August 1, 2002, the TDF issued a directive (the "directive") entitled "Writ Team Procedures." The directive has remained in effect since the date it was issued and is an emergency policy that, in part, covers traffic accidents during the transport of TDF residents. The stated purpose of the directive is to "establish and maintain procedures to ensure the supervision of residents transported off [TDF] grounds is accomplished in a manner which ensures the safety of staff, residents and the community." Included in the directive is an instruction that in the event of an emergency road accident, "notification via 911 for assistance shall be made."

### III.

Count I of Cain's complaint alleges that defendants failed to provide him with medical care after the February 3 accident and that their actions showed deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983. To state a claim under § 1983, Cain must show that he was deprived of a federal right, privilege or immunity by a person acting under color of

6

state law. *Id.* In their motion for summary judgment, Fakih and Sanders argue that they did not deprive Cain of a federal right as he claims because they were not deliberately indifferent to his serious medical needs.

Cain was civilly committed under the SVPA at the time of the February 3 accident, so his deliberate indifference claim is governed by the Fourteenth Amendment. *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005) (addressing a § 1983 claim brought by a TDF resident who alleged that TDF personnel failed to protect him from an attack by a fellow resident); *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003) (affirming summary judgment for sheriff on a claim that he failed to protect a pre-trial detainee from a beating by fellow inmates of the county jail). However, the deliberate indifference standard under the Fourteenth Amendment is practically the same as the standard under the Eighth Amendment, so "§ 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Brown*, 398 F.3d at 910 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999)); *see also Board v. Farnham*, 394 F.3d 469, 477-78 (7th Cir. 2005) (citing *West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997)) (explaining that, although protection against deliberate indifference under the Fourteenth Amendment is slightly more expansive than under the Eighth Amendment and is articulated as the "conscious disregard of known or obvious dangers," because of the

difficulty of assessing the mental state of government officials, the distinction between the tests under the two amendments "is of little significance in practical application").[4]

To establish his deliberate indifference claim, Cain must show that he had an objectively serious medical condition and that defendants were deliberately indifferent to that condition. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)); *Board*, 394 F.3d at 478 (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2001); *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994)). "Deliberate indifference" requires that the defendants have "subjective awareness" of the serious medical need and then act with indifference to that need. *Johnson*, 444 F.3d at 584 (citing *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004)). Whether defendants acted with deliberate indifference is a question of fact. *See Johnson v. Doughty*, 433 F.3d 1001, 1018 (7th Cir. 2006) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir.

---

[4]Cain notes in his response that, under *Youngberg v. Romeo*, 457 U.S. 307 (1982), persons subject to involuntary civil commitment "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321-22. The Supreme Court held in *Youngberg* that persons subject to involuntary civil commitment may not be held in conditions of confinement designed to punish, or instituted without the exercise of professional judgment concerning the needs of those committed. *See id.; see also Allison v. Snyder*, 332 F.3d 1076, 1080 (7th Cir. 2003). However, this higher standard does not affect the Fourteenth Amendment standard articulated above. Cain does not argue and has not alleged that the manner in which he was treated was designed to punish him.

2000)). Therefore, I must determine, taking the facts in the light most favorable to Cain, whether there is a genuine issue of material fact about Sanders and Fakih's deliberate indifference to his objectively serious medical condition.[5]

I conclude that there is no evidence that Sanders and Fakih were deliberately indifferent to Cain. First, defendants do dispute that Cain had a serious injury, but taking the facts in the light most favorable to him, it is possible that a jury could find that at the scene of the February 3 accident, he had a serious injury. A serious injury is an injury that "may be life threatening or pose a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). Taking the facts in the light most favorable to Cain, Cain had been in a significant automobile accident that damaged the vehicle, and he complained of neck and back pain and of headaches. He ultimately was diagnosed with a sprained shoulder. It is possible that these injuries posed a risk of needless pain or lingering disability. The problem for Cain is that, even taking the facts in the light most favorable to him, he cannot show that either Sanders or Fakih were deliberately indifferent to his condition. First, Cain concedes that once he returned to TDF,

---

[5]Some of the arguments in Cain's response relate to whether other defendants were deliberately indifferent to his serious medical condition, or failed to provide medical treatment to him. For purposes of this motion, I need only consider whether Fakih and Sanders were deliberately indifferent to his serious medical need.

Fakih no longer had any authority over his treatment. Cain also has alleged no facts showing that Fakih had any interaction or involvement with him at any point after he returned to TDF, so Fakih's liability, if any, can only stem from his actions at the scene of the accident. It is undisputed that immediately after the truck struck the DHS van, either Fakih or Eckdahl called 911 and asked Cain about his condition. It is further undisputed that, although Cain complained of pain at the scene, he declined to go directly to the hospital. Fakih took Cain directly from the scene back to TDF where Cain was immediately seen by a TDF doctor, who ultimately recommended that Cain go to a hospital. From these undisputed facts there is no basis from which a finder of fact could conclude the Fakih was deliberately indifferent. Although Cain now argues that he did not receive treatment following the accident as quickly as he would have liked, there is no evidence that Fakih was deliberately indifferent in delaying medical treatment. See Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)) (holding that, to establish delay in receiving medical treatment constituted deliberate indifference, a plaintiff must present "verifying medical evidence" in the record to establish that the delay had a detrimental effect).

In his response to Fakih and Sanders' motion, Cain emphasizes that he had to ride in the van from the site of the accident back to TDF, and because one of the van's windows was broken it was a

very cold ride. Taking the facts in the light most favorable to Cain, a trip of up to an hour in a van in February weather in Chicago would have been uncomfortable, and could have been very cold, but this does not rise to the level of a constitutional violation. Respondents have an obligation to provide adequate shelter for Cain, and prolonged inadequate heating may state an Eighth or Fourteenth Amendment claim. *See, e.g., Lewis v. Lane*, 816 F.2d 1165, 1170-71 (7th Cir. 1987); *Murphy v. Walker*, 51 F.3d 714, 720-21 (7th Cir. 1995). However, at most this was an hour of physical discomfort for Cain; Cain has presented no evidence that this had adverse health effects, or that Eckdahl and Fakih transported Cain in the van in order to punish him (as would be improper under *Youngberg*) or for an otherwise improper purpose. It was reasonable for Eckdahl and Fakih to transport Cain in the damaged van since they were driving him back to TDF to seek medical treatment for him.

There is even less evidence supporting Sanders' liability. Cain has acknowledged that Sanders was not present at the scene of the accident, and has articulated no basis for Sanders' direct responsibility, as director of security, for providing medical care to Cain. Consequently, taking the facts in the light most favorable to Sanders, there is no evidence that he was deliberately indifferent to Cain's serious medical need. For this reason, I grant summary judgment to Fakih and Sanders on Count I.

IV.

Count II of Cain's complaint alleges that defendants were deliberately indifferent to his serious medical need by failing to have a policy in place to address medical treatment for TDF residents in the event they are involved in a traffic accident.[6] Section 1983 does not allow for vicarious liability; to be liable for a constitutional violation, a defendant must directly participate in a constitutional violation. *See Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998); *see also Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.") (internal citation omitted). Where a defendant has participated in a purported constitutional violation only by failing to enforce existing policies or by failing to implement policies, that defendant can only be liable if the underlying conduct resulted in a constitutional violation, and if the defendant acted with deliberate indifference. *See id.* Put another way, TDF officials have no independent constitutional obligation to create or enforce policies governing the treatment of TDF residents unless, by failing to create or enforce those policies, underlying harm resulted.

---

[6] Cain's complaint is unclear against which defendants Count II is brought. For this reason, I assess its applicability to Fakih and Sanders.

Here, setting aside the issue of whether an underlying constitutional violation occurred, Cain has presented no facts that, if true, would establish that Fakih had any authority or responsibility over the creation or enforcement of TDF policy, so Fakih can have no liability stemming from a purported failure to create appropriate policy to handle traffic accidents. Sanders also provided an affidavit stating that he had no responsibility over medical decisions made to treat residents after traffic accidents, and Cain has presented no evidence to show that Sanders had any responsibility or authority over the creation or enforcement of TDF policy governing traffic accidents. For this reason, taking all the facts as true, Cain has presented no evidence supporting liability against either Fakih or Sanders on this theory, and I grant summary judgement to them on Count II.

V.

Fakih and Sanders also note in their motion to suppress that I should grant summary judgment for defendants Eckdahl and Budz. They note that Eckdahl and Budz have never been properly served and consequently have not filed their own motion to dismiss Cain's claims against them.[7] However, Fakih and Sanders suggest that summary judgment is appropriate for Eckdahl and Budz for the same

---

[7]Fakih and Sanders contend that Cain never properly served Budz and Eckdahl. The record reflects that both Budz and Eckdahl were sent the complaint and copies of a waiver via certified mail, but Fakih and Sanders contend that this was inadequate because Budz and Eckdahl did not waive service. Counsel has not filed an appearance for either Budz nor Eckdahl, but Cain has also never moved for a default judgment against either defendant.

13

reasons it is appropriate for them, and that I should grant it even though Eckdahl and Budz have not moved for summary judgment. *See, e.g., Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994). I agree with Fakih and Sanders that there does appear to be a basis for summary judgment for Eckdahl and Budz. For this reason, I order Cain to show good cause in writing why summary judgment should not be granted in favor of Eckdahl and Budz. Failure to show cause within 28 days of this order will result in entry of summary judgment for Budz and Eckdahl and termination of this case in its entirety.

VI.

For the foregoing reasons, I grant summary judgment for Fakih and Sanders on all of Cain's claims against them. Cain is further ordered to show cause within 28 days of this order why summary judgment should not be granted in favor of Eckdahl and Budz.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January /2, 2007